SA26CA0251 **FB**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

### SAN ANTONIO DIVISION

FILED

ANWAR-FARRA CONGRESS,
Plaintiff,

v.

COOK COUNTY, ILLINOIS;
FORSYTH COUNTY, NORTH CAROLINA;
CITY OF NEWPORT NEWS, VIRGINIA;
CHRISTOPHER PAUL REAGAN;
MARC PHILLIP MESSIER;
ANGELA EDWARDS ROBERTS;
GARY ANDREW MILLS;
TIMOTHY SCOTT FISHER;
JOHN DOE OFFICERS 1–10;
MERCEDES ERIKA CONGRESS,
Defendants.

JAN 20 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, DAMAGES, AND TEMPORARY RESTRAINING ORDER

*(42 U.S.C. §§ 1983, 1985; RFRA; U.S. Constitution)*

JURY TRIAL DEMANDED

## I. INTRODUCTION

1. This civil-rights action arises from a coordinated course of conduct by state and local officials in Virginia, Illinois, and North Carolina, acting under color of law and in concert with Plaintiff's estranged spouse, that resulted in the unlawful seizure and concealment of Plaintiff's minor daughter, the criminalization of Plaintiff's exercise of parental rights,

page 1 of 20

Plaintiff's interstate detention and imprisonment without lawful jurisdiction, and the extraction of Plaintiff's property through enforcement mechanisms predicated on void proceedings.

2. Plaintiff Anwar-Farra Congress is the biological father of the minor child at issue. He has never been adjudicated unfit, dangerous, or neglectful by a court of competent jurisdiction.

3. The parent-child relationship is a fundamental liberty interest protected by the First, Fourth, Fifth, and Fourteenth Amendments. Defendants' actions deprived Plaintiff of that interest without notice, without jurisdiction, without lawful process, and without any adjudication supported by evidence.

4. Plaintiff seeks declaratory relief establishing the unconstitutionality of Defendants' conduct; injunctive relief halting ongoing enforcement and concealment; damages for past constitutional injuries; and temporary emergency relief to prevent irreparable harm.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 1983 and 1985, the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

6. Supplemental jurisdiction exists under 28 U.S.C. § 1367.

7. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) because Plaintiff lives near this District, and continues to suffer the ongoing effects of Defendants' unconstitutional conduct here, including deprivation of familial association, reputational injury, financial loss, and emotional distress.

## III. JUSTICIABILITY AND ABSTENTION

8. This action is not barred by the Rooker–Feldman doctrine because Plaintiff does not seek appellate review of a final state-court judgment. Plaintiff challenges independent

Page 2 of 20

constitutional violations and the continuing enforcement of orders entered without lawful jurisdiction or due process.

9. Younger abstention does not apply because there is no ongoing state proceeding affording Plaintiff a full and fair opportunity to litigate his federal constitutional claims, and the challenged conduct includes bad-faith enforcement and completed violations.

10. Domestic-relations abstention does not apply because Plaintiff does not request that this Court issue or modify a custody decree. Plaintiff seeks redress for constitutional injuries arising from unlawful seizure, detention, and enforcement actions taken under color of law.

11. The Anti-Injunction Act does not bar prospective relief where Plaintiff seeks to prevent ongoing enforcement of constitutionally void actions.

## IV. STATUTE OF LIMITATIONS AND EQUITABLE TOLLING

12. Any statute-of-limitations defense is barred by equitable tolling, fraudulent concealment, and the continuing-violation doctrine.

13. Plaintiff was incarcerated for extended periods between 2018 (45 days) and 2020( October 2019 to October 2020) as a direct result of Defendants' actions, severely limiting his ability to access courts (protected First Amendment right guaranteed), or discover the full scope of Defendants' conduct.

14. Defendants concealed jurisdictional defects, relied on ex parte and administrative mechanisms, withheld records, and refused to address Plaintiff's objections.

15. Plaintiff exercised diligence through repeated notices, emergency filings, and remonstrances, which were ignored or mischaracterized.

16. Defendants' actions constitute a continuing violation because enforcement of void orders, concealment of Plaintiff's child, and financial extraction persisted through at least 2025.

## V. PARTIES

17. Plaintiff Anwar-Farra Congress lives in Texas and is the biological father of the minor child.

18. Defendant Cook County, Illinois is a municipal entity responsible for its law-enforcement practices.

19. Defendant Forsyth County, North Carolina is a municipal entity responsible for its sheriff's department and detention practices.

20. Defendant City of Newport News, Virginia is a municipal entity responsible for its courts, police, and administrative detention facilities.

21. Defendants Reagan, Messier, Roberts, Mills, and Fisher are attorneys or judicial officers who acted under color of law.

22. Defendant Mercedes Erika Congress acted jointly with state actors to initiate and sustain the challenged conduct.

V. FACTUAL ALLEGATIONS

A. Family Background and Parental Relationship

23. Plaintiff Anwar-Farra Congress ("Plaintiff") and Defendant Mercedes Erika Congress were married on or about [July 15, 2014] in or near [Greensboro, North Carolina].

24. The parties' daughter was born on or about [April 7th, 2015]. Plaintiff was present at her birth and maintained an active parental role thereafter.

25. At all relevant times prior to the events described below, Plaintiff exercised parental care, custody, and financial support for his daughter, and no court had adjudicated Plaintiff unfit or restricted his parental rights.

B. Attorney Misconduct and Initiation of Administrative Proceedings (2016)

*Page 4 of 20*

26. On or about September 24, 2016, Defendant Christopher Paul Reagan transmitted a document titled "Motion to Continue" to Plaintiff and to the Newport News Juvenile and Domestic Relations Court.

27. The communication was issued without a verified complaint, sworn factual basis, or judicial finding establishing jurisdiction over Plaintiff or his parental relationship.

28. Plaintiff received the communication at his home in [Grovetown, Georgia], despite no prior notice of proceedings or allegations requiring response.

29. On or about October 27, 2016, Defendant Marc Phillip Messier, acting as Plaintiff's counsel, failed to disclose material filings, including an alleged ex parte protection order purportedly initiated by Defendant Mercedes Erika Congress. Ronald Everett Bensten, an officer of the court, acted jointly with attorneys by acting without due process and failed to disclose by what authority or factual emergency powers they were claiming to have (November 3rd, 2016 produced a void order).

30. Defendant Messier failed to challenge jurisdiction, failed to contest the absence of sworn allegations, and failed to protect Plaintiff's parental interests, despite knowing that Plaintiff's child was not subject to dependency, neglect, or emergency jurisdiction.

31. Plaintiff reasonably relied on Defendant Messier's representations, trusting that Defendant Messier was doing what was right and lawful, resulting in Plaintiff's continued participation in administrative proceedings that lacked lawful jurisdiction and constitutional safeguards.

C. Child-Support Order Issued Without Custody Adjudication (January–February 2018)

32. On or about January 26, 2018, Defendant Angela Edwards Roberts, acting as a family-court judicial officer, issued a child-support order requiring Plaintiff to pay approximately $2,000 per month, including alleged arrears.

33. The child-support order was entered without any lawful custody determination, without termination or limitation of Plaintiff's parental rights, and without findings of parental

unfitness due to harm to his child.

34. Plaintiff was not afforded a meaningful opportunity to contest jurisdiction, evidentiary sufficiency, or the factual predicate for the order.

35. Beginning on or about February 2018, Plaintiff's wages were garnished pursuant to the child support order.

36. The garnishment continued until approximately [July 2025], when Plaintiff discovered through a credit reporting agency that the account had been closed.

37. The financial enforcement actions would not have occurred absent Defendants' prior unconstitutional interference with Plaintiff's parental relationship and liberty interests.

D. Medical Emergency and Plaintiff's Attempts to Protect Child (2018)

38. In or about February 2018, Plaintiff learned that Defendant Mercedes Erika Congress entered military basic training without securing urgent medical care for the parties' daughter, whose untreated dental condition posed serious health risks.

39. Plaintiff sent emergency notices seeking access to medical records and intervention to protect his child's health.

40. On or about May 11, 2018, Plaintiff obtained an emergency hearing permitting necessary medical treatment and access to medical records.

41. In or about August 2018, Plaintiff issued written notice to family-court personnel detailing the harm caused to both Plaintiff and his daughter and objecting to further administrative proceedings.

E. Arrest, Seizure of Child, and Interstate Detention (November–December 2018)

page 6 of 20

42. On or about November 3, 2018, at approximately 10:50 p.m., Plaintiff and his child were subjected to a traffic stop in Schaumburg, Cook County, Illinois.

43. Plaintiff was arrested without a verified warrant, without a sworn probable-cause affidavit, and without judicial findings supporting arrest.

44. During the arrest, Plaintiff's daughter was forcibly separated from him without notice, hearing, or adjudication of parental unfitness, danger, or abandonment.

45. Plaintiff was transported across state lines to Newport News, Virginia under the guise of statutory extradition, despite the absence of valid criminal charges.

46. Plaintiff remained detained for approximately [duration], during which he was denied meaningful access to a court of competent jurisdiction.

47. On or about December 17, 2018, Plaintiff was brought before Defendant Angela Edwards Roberts while shackled and incarcerated.

48. Defendant Roberts conducted proceedings without sworn pleadings, without jurisdictional findings, and without affording Plaintiff the opportunity to confront evidence or witnesses.

49. Defendant Roberts had previously authorized or relied upon administrative directives or warrants lacking verified charges, which formed the basis for Plaintiff's detention.

F. Suppression of Appellate and Legislative Redress (2018–2019)

50. On or about September 26, 2018, Plaintiff filed an action against Defendant Christopher Paul Reagan in the Supreme Court of Virginia (Record No. [181265]).

51. Defendant Reagan did not respond to Plaintiff's sworn affidavit, leaving its factual assertions unrebutted.

52. On or about February 21, 2019, relief was denied through the application of Va. Code § 8.01-654(A)(2) in a manner that foreclosed review despite ongoing deprivation of

Plaintiff's rights.

53. On or about February 14, 2019, Plaintiff submitted a formal remonstrance to members of the Virginia General Assembly concerning unconstitutional actions by Newport News officials.

54. Plaintiff received communications from legislative staff but no corrective action followed.

55. Correspondence dated on or about March 11, 2019 reflected that Plaintiff's remonstrance had been mischaracterized and not addressed on its merits.

G. Continued Detention, Coercion, and Void Plea (2020)

56. While Plaintiff remained detained into 2020, Defendant Gary Andrew Mills informed Plaintiff that his objections were ineffective because the tribunal was "not an Article III court."

57. Despite acknowledging the absence of Article III jurisdiction, Plaintiff's detention continued.

58. On or about September 28, 2020, Defendant Timothy Scott Fisher refused to allow Plaintiff to appear in court unless Plaintiff provided a Social Security number, despite no lawful requirement.

59. On or about October 13, 2020, Plaintiff was coerced into entering a plea under duress, with release conditioned upon acceptance of a judgment entered without jurisdiction or lawful consent.

60. Plaintiff was released around the same day but subjected to a multi-year plea term derived from constitutionally defective proceedings.

H. Ongoing Harm

61. Plaintiff has been denied contact with his daughter since [November 3rd, 2018].

62. Plaintiff continues to suffer emotional distress, reputational harm, financial loss, and loss of familial association. Plaintiff's child has also lost time, emotional support and financial support from her biological father.

63. Defendants' actions constitute completed and ongoing violations of Plaintiff's constitutional rights.

## PART II — CONVERT FACTS INTO PATTERN-AND-PRACTICE ALLEGATIONS

64. Plaintiff alleges that the constitutional violations described herein were not isolated incidents or good-faith errors, but the result of systemic practices, customs, and policies maintained by Defendants.

65. The City of Newport News maintained a practice of:
    a. Initiating family-court proceedings without verified pleadings;
    b. Issuing administrative custody and support orders absent jurisdiction;
    c. Referring parental disputes for criminal enforcement without lawful predicate.

66. Newport News officials routinely utilized:
    a. Ex parte administrative orders;
    b. Secret or unsupported warrants;
    c. Jail detention without valid criminal charges;
    d. Conditioning court access or release on non-statutory requirements.

67. Cook County maintained a custom of:
    a. Executing out-of-state warrants without judicial verification;
    b. Arresting parents during routine traffic stops based on administrative family disputes;
    c. Separating children from parents without exigency or adjudication.

68. Forsyth County similarly engaged in:
    a. Traffic stops and arrests based on facially invalid warrants;

b. Interstate detention without confirming jurisdiction;

c. Cooperation with administrative family-court enforcement lacking criminal basis.

69. These municipalities failed to train officers regarding:

a. Constitutional limits on child seizure;

b. Due-process requirements for parental deprivation;

c. The distinction between civil family matters and criminal enforcement.

70. Judicial officers acting in administrative capacities routinely exceeded jurisdiction by:

a. Authorizing detention absent criminal charges;

b. Coercing pleas to secure release;

c. Continuing enforcement after acknowledging lack of Article III authority.

71. Defendants' practices resulted in:

a. Routine deprivation of parental rights without adjudication;

b. Financial extraction through support enforcement lacking lawful predicate;

c. Suppression of constitutional challenges through administrative coercion.

72. These practices were known, tolerated, and ratified by municipal policymakers, including supervisory officials responsible for court administration, law enforcement training, and detention practices.

73. Plaintiff's injuries were the foreseeable and intended consequences of these customs and practices.

## PART IV. STATUTE OF LIMITATIONS AND EQUITABLE TOLLING

74. Defendants are expected to assert statute-of-limitations defenses. Any such defense is barred by equitable tolling, fraudulent concealment, and the continuing-violation doctrine.

75. Plaintiff was incarcerated for substantial periods between 2018 and 2020 as a direct result of Defendants' unconstitutional acts, including false arrest, interstate detention, and administrative confinement without valid criminal charges.

76. During Plaintiff's incarceration, Defendants:
   a. Concealed the jurisdictional defects underlying Plaintiff's detention;
   b. Withheld access to evidence, records, and pleadings;
   c. Denied Plaintiff meaningful access to a court of competent jurisdiction; and
   d. Conditioned Plaintiff's release on coerced pleas and administrative compliance.

77. Defendants further engaged in fraudulent concealment by:
   a. Using ex parte administrative proceedings without notice;
   b. Issuing secret or unsupported warrants;
   c. Refusing to respond to jurisdictional notices; and
   d. Concealing the whereabouts and custodial status of Plaintiff's daughter.

78. Plaintiff exercised reasonable diligence under the circumstances, repeatedly filing notices, objections, remonstrances, and emergency pleadings, all of which were ignored, mischaracterized, or suppressed.

79. Plaintiff could not reasonably have discovered the full scope of Defendants' coordinated conduct, policies, and cross-jurisdictional enforcement practices until after his release and relocation to Texas.

80. Additionally, Defendants' conduct constitutes a continuing violation, as the effects of the unconstitutional acts—including loss of parental association, enforcement of void orders, financial extraction, and concealment of Plaintiff's child—persist to the present day.

81. Accordingly, all limitations periods were tolled until Plaintiff was no longer imprisoned, was no longer subject to concealment, and could reasonably access a competent federal forum.

**PART V: COUNTS AND CAUSES OF ACTION**

**COUNT I – VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS**

page 11 of 20

(42 U.S.C. § 1983; U.S. CONST. AMENDS. V & XIV)

**Against All Governmental Defendants and Mercedes Erika Congress (Plaintiff's estranged wife)**

82. Plaintiff realleges and incorporates by reference paragraphs 1–82 as though fully set forth herein.

83. Plaintiff has a **fundamental liberty interest** in the care, custody, and companionship of his daughter, protected by the Due Process Clause. See *Troxel v. Granville*, 530 U.S. 57 (2000); *Santosky v. Kramer*, 455 U.S. 745 (1982).

84. Defendants, acting under color of state law and in concert with Mercedes Erika Congress, **removed Plaintiff's child, concealed her whereabouts, and imprisoned Plaintiff** without providing:

85. a. Proper notice;
   b. A verified complaint or petition;
   c. A full and fair hearing before a court of competent jurisdiction;
   d. Findings by clear and convincing evidence of unfitness or harm; or
   e. Any lawful adjudication terminating or limiting Plaintiff's parental rights.

86. The use of **secret warrants**, ex parte actions, administrative "family court" hearings, and coercive plea tactics without jurisdiction violated **procedural due process**.

87. The **substance** of Defendants' conduct—treating a loving father as a kidnapper, imprisoning him for a year, and severing all contact with his child without lawful basis—**shocks the conscience** and violates **substantive due process**.

88. As a direct and proximate result of these actions, Plaintiff has suffered loss of his child's companionship, emotional distress, reputational harm, and other damages.

## COUNT II – VIOLATION OF RIGHT TO FAMILIAL ASSOCIATION

(First and Fourteenth Amendments; 42 U.S.C. § 1983)
**Against All Governmental Defendants and Mercedes Erika Congress**

89. Plaintiff realleges and incorporates paragraphs 1–89.

90. The relationship between parent and child is a form of **intimate association** protected by the First and Fourteenth Amendments.

91. Defendants interfered with Plaintiff's familial association by **removing, transporting, and concealing his daughter**, and by criminalizing Plaintiff's exercise of his parental role, all without a compelling state interest and without narrowly tailored means.

92. Plaintiff has the right to be **free from arbitrary state interference** with his family integrity. Defendants' conduct violated that right.

## COUNT III – VIOLATION OF RFRA AND FREE EXERCISE OF RELIGION

(42 U.S.C. § 2000bb et seq.; U.S. CONST. AMEND. I)
**Against All Governmental Defendants and Mercedes Erika Congress (as Co-Conspirator)**

93. Plaintiff re-alleges paragraphs 1–93.

94. Plaintiff's **sincere religious beliefs** require him to raise, guide, and protect his daughter in accordance with Scripture and his faith (as more fully set forth in his **Verified Declaration of Beliefs**, incorporated by reference).

95. Defendants' actions **substantially burdened** his religious exercise (**fundamental freedoms**) by preventing him from fulfilling his God-given duty as father, cutting off all contact with his child, and imprisoning him for attempting to exercise that duty.

96. Defendants did not employ the **least restrictive means** to further any compelling governmental interest, as required by RFRA and strict scrutiny under the First Amendment.

97. Plaintiff is entitled to declaratory and injunctive relief, as well as damages, under RFRA.

## COUNT IV – UNLAWFUL SEIZURE, FALSE ARREST, AND FALSE IMPRISONMENT

(Fourth and Fourteenth Amendments; 42 U.S.C. § 1983)
**Against Cook County Officers, Forsyth County Deputy C. Jones, Newport News Officials, and Conspiring Defendants**

98. Plaintiff re-alleges paragraphs 1–98.

99. On November 3, 2018, Cook County officers, including **Officer Lopez and Officer Reich**, stopped Plaintiff without lawful basis, seized his child, and arrested Plaintiff under a **defective Virginia warrant** that contained no valid charge and no probable cause supported by oath or affirmation.

100. Forsyth County deputy **C. Jones** and other officers likewise arrested and transported Plaintiff in later incidents based on invalid or secret Virginia warrants.

101. Plaintiff's arrest, transport, and year-long imprisonment were **without probable cause**, without valid charges, and without lawful process, violating the **Fourth Amendment**.

102. Plaintiff is entitled to damages for the **false arrest and false imprisonment** he suffered in Illinois, North Carolina, and Virginia under color of law.

## COUNT V – ABUSE OF PROCESS (STATE LAW)

**Against Cook County, Forsyth County, City of Newport News, and Individual Officers/Attorneys**

103. Plaintiff re-alleges paragraphs 1–103.

104. Defendants used legal process—warrants, extradition procedures, family-court filings, and criminal charges—not for their lawful purpose, but to **coerce Plaintiff, remove his child, and suppress his parental rights**.

105.    The **ulterior purposes** included: enforcing a private marital dispute as a criminal matter; insulating state actors from scrutiny; and maintaining custody arrangements without lawful adjudication.

106.    Such misuse of process constitutes **abuse of process** under applicable state common law. This Court has supplemental jurisdiction over that claim.

### COUNT VI – CIVIL CONSPIRACY UNDER § 1983

### Against All Individual Defendants and Mercedes Erika Congress

107.    Plaintiff re-alleges paragraphs 1–80.

108.    Defendants reached an **agreement or understanding**, tacit or express, to deprive Plaintiff of his constitutional rights by:

109.    a. Labeling him a kidnapper of his own child;

b. Using secret or unsupported warrants;

c. Transporting him across state lines;

d. Using family-court and criminal processes to secure his confinement; and

e. Concealing his daughter's location indefinitely.

110.    Defendants' coordinated acts under color of law constitute a **conspiracy to violate clearly established constitutional rights** under 42 U.S.C. § 1983.

### COUNT VII – MUNICIPAL LIABILITY UNDER MONELL

111.    (Against City of Newport News, Cook County, and Forsyth County)

112.    Plaintiff re-alleges paragraphs 1–83.

113.    The constitutional violations suffered by Plaintiff were caused by **policies, customs, or practices** of:

114.    **Cook County** (reliance on out-of-state warrants without verification; routine extradition without judicial scrutiny);

page 15 of 20

115.    **Forsyth County** (traffic stops and arrests based on unverified warrants and administrative family-dispute matters);

116.    **City of Newport News** (family-court use of secret orders, DSS involvement without due process, and jail practices that condition court access on Social Security numbers and coerced pleas).

117.    These municipalities failed to **train, supervise, or discipline** employees regarding parental rights, due process, and extradition, displaying **deliberate indifference** to the risk of constitutional injury.

118.    Under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), these municipalities are liable for constitutional injuries caused by their policies, customs, and failures.

**Count VII – Unconstitutional Taking of Property and Deprivation of Property Without Due Process**

**(42 U.S.C. § 1983 – Fifth and Fourteenth Amendments)**
**Against: All Defendants Involved in Enforcement, Garnishment, or Collection**

119.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

120.    Plaintiff possessed a protected property interest in his wages, earnings, and personal property.

121.    Following the unlawful seizure and concealment of Plaintiff's minor daughter—undertaken without lawful jurisdiction, verified charges, notice, or an adjudication of parental unfitness—Defendants initiated and enforced child-support and related financial obligations against Plaintiff.

122.    The imposition and enforcement of these financial obligations, including wage garnishment, interception of funds, and related enforcement mechanisms, were **proximately caused** by Defendants' prior unconstitutional interference with Plaintiff's parental rights and were **not** the product of any voluntary consent or lawful judicial process consistent with due process.

123.    Defendants acted under color of law to seize Plaintiff's property through administrative and judicial mechanisms that lacked lawful jurisdiction over Plaintiff and were predicated on void or ultra vires actions.

124.    Plaintiff was deprived of property **without due process of law**, including the absence of meaningful notice, a neutral adjudication by a court of competent jurisdiction, and an opportunity to be heard on the threshold question of jurisdiction and lawful predicate.

125.    The seizures constituted an **unconstitutional taking** and deprivation of property in violation of the Fifth and Fourteenth Amendments, as applied to the states, because the exactions were compelled, non-consensual, and unsupported by lawful authority.

126.    Plaintiff does **not** seek review, modification, or reversal of any state domestic-relations order. Rather, Plaintiff challenges **independent constitutional violations** by Defendants whose unlawful conduct caused the extraction of Plaintiff's property.

127.    As a direct and proximate result of Defendants' actions, Plaintiff suffered monetary loss, loss of use of funds, consequential damages, emotional distress, and continuing harm.

128.    Plaintiff is entitled to **restitution** of all funds unlawfully seized, **compensatory damages**, **punitive damages** against individual Defendants acting with reckless or callous indifference, **pre- and post-judgment interest**, and **equitable relief** as appropriate.

## VI. DAMAGES AND RESTITUTION

129.    Plaintiff seeks restitution of all sums seized from him through wage garnishment, fund interception, and related enforcement actions that flowed from Defendants' unconstitutional conduct, in an amount to be proven at trial.

130.    Plaintiff seeks compensatory damages for:

131.    **Economic losses**, including wages and funds seized, lost use of money, fees, penalties, and costs incurred to contest unlawful enforcement;

132.    **Consequential damages**, including disruption of employment, credit harm, and financial instability proximately caused by unlawful seizures;

133.    **Non-economic damages**, including emotional distress, mental anguish, loss of familial association, and reputational harm.

page 17 of 20

134.    Plaintiff seeks **punitive damages** against individual Defendants in their personal capacities for willful, malicious, or reckless disregard of Plaintiff's constitutional rights.

135.    Plaintiff seeks **pre-judgment and post-judgment interest** as permitted by law, to fully compensate for the time-value of money wrongfully taken.

136.    Plaintiff seeks **declaratory relief** that the seizures were unconstitutional and **prospective injunctive relief** prohibiting Defendants from continuing enforcement actions predicated on unconstitutional conduct.

## VII. REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

88. Plaintiff realleges and incorporates paragraphs 1–87.

89. Plaintiff seeks a **Temporary Restraining Order (TRO)** and subsequent **preliminary injunction** prohibiting Defendants, their officers, agents, employees, and those in active concert with them from:

a. Further enforcing any **void orders, judgments, or warrants** against Plaintiff arising from the alleged "kidnapping" of his own daughter;

b. Relocating, further concealing, or restricting Plaintiff's daughter in retaliation for this suit;

c. Taking any new adverse administrative or criminal action against Plaintiff based on the events alleged herein.

90. Plaintiff faces **irreparable harm** in the form of continued loss of his relationship with his daughter, ongoing constitutional violations, and risk of renewed arrest or interference.

91. The balance of equities favors Plaintiff, and the requested TRO and preliminary injunction serve the **public interest** by vindicating constitutional rights.

---

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a **Temporary Restraining Order** and **Preliminary Injunction** as described in Paragraphs 88–91;

B. Declare that Defendants' actions violated Plaintiff's rights under the **First, Fourth, Fifth, and Fourteenth Amendments**, RFRA, and 42 U.S.C. § 1983;

C. Declare void and of no effect any purported orders, judgments, warrants, or pleas obtained against Plaintiff in **Newport News, Virginia**, and related jurisdictions that were entered without jurisdiction, without due process, or under coercion;

D. Order Defendants to **disclose the present whereabouts and custodial status of Plaintiff's daughter**, and to refrain from interfering with Plaintiff's lawful attempts to communicate with and restore relationship with his daughter, subject to further orders of this Court;

E. Award Plaintiff **compensatory damages** for emotional distress, loss of familial association, unlawful imprisonment, and related injuries, in an amount to be determined at trial;

F. Award **punitive damages** against the individual Defendants for their willful and reckless disregard of Plaintiff's constitutional rights;

G. Award Plaintiff **costs of suit, including reasonable attorney's fees** (if counsel later appears) under 42 U.S.C. § 1988 and other applicable law;

H. Grant such other and further legal or equitable relief as this Court deems just and proper.

---

## IX. JURY DEMAND

Plaintiff hereby **demands trial by jury** on all issues so triable.

---

## X. VERIFICATION

I, Anwar-Farra Congress, declare under penalty of perjury under the laws of the United States of America that the facts stated in this Verified Complaint are true and correct to the best of my knowledge, information, and belief.

Executed this 20th day of [January], 2026, near San Antonio, Texas.

Print: Anwar-farra Congress

Anwar-Farra Congress, Plaintiff
c/o [14607 Clay Ridge Run]
Near San Antonio, Texas [ZIP NON-DOMESTIC]
[Contact information: 224-413-9487]